699 S.E.2d 695

**In the Matter of Eric Reed MARTIN, Respondent.**

**No. 26881.**

Supreme Court of South Carolina.

Heard Aug. 4, 2010.

Decided Sept. 20, 2010.

468

Lesley M. Coggiola, Disciplinary Counsel, and William C. Campbell, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Eric Reed Martin, pro se, of Columbia.

PER CURIAM.

In this attorney disciplinary matter of admitted misconduct, we find the appropriate sanction is a public reprimand.

In 2003 and 2004, Respondent Eric Reed Martin conducted three real estate transactions in which he failed to follow proper procedures. In response to the first two complaints, ODC and Respondent entered a Deferred Discipline Agreement that required Respondent to obtain a Law Office Management Advisor and meet with that advisor for a thorough and ongoing review of Respondent's law office management practices. Respondent failed to comply with the terms of the Agreement, and the Agreement was terminated. In the meantime, ODC received a third complaint arising from the same general time frame as the first two complaints. ODC brought formal charges against Respondent based on the three complaints. Respondent admitted the charges, and a Hearing Panel of the Commission on Lawyer Conduct ("the Panel") recommended a definite suspension of ninety days. As noted, we issue a public reprimand.

## I.

### Matter I

On October 8, 2003, while employed at the Dallis Law Firm, Respondent represented Client A in a real estate closing. Following the closing, Respondent failed to promptly record the deed, issue the title insurance policy, and deliver the closing documents to the lender. In addition, Respondent failed to ensure the HUD statement was accurate, and he disbursed a portion of the proceeds of the transaction prior to depositing those proceeds into the firm's trust account. Respondent did not reply when Client A called with concerns about the closing. Finally, Respondent did not ensure the outstanding tasks in Matter I were completed before he left the Dallis Law Firm.

### Matter II

On October 4, 2004, as a solo practitioner, Respondent represented Client B in a real estate closing. Respondent did

not record the deed and mortgage from this closing until December 2006. He did not adequately respond to Client B's inquiries about the matter.

## Matter III

On October 31, 2003, while still employed at the Dallis Law Firm, Respondent represented Client C in a real estate refinance. According to Respondent, he was not aware that Client C was married until he began to review the loan documents with the client. Upon learning Client C was married and the property was jointly titled in the name of both spouses, Respondent determined that he would move forward with the refinance and have the client's wife sign the appropriate documents at a later date.

Respondent did not obtain the appropriate documents from Client C's wife. He processed the file and submitted a title insurance policy to the lender, and the title policy and other documents indicated Client C was the sole owner of the property. Respondent did not disclose to the lender that the property was jointly owned by the client and his wife. As a result, the lender disbursed the loan and obtained a security interest in only one half of the property.

## II.

At the hearing before the Panel, Respondent conceded that ODC's allegations were true, although he denied any intent to deceive the lender in Matter III. Respondent asserted he scheduled at least three appointments with Client C's wife so that she could sign a deed, but she did not keep the appointments. Respondent stated that, after these failed attempts, he "basically . . . just forgot about [Client C's wife]."

Respondent asserted his failure to timely file documents resulted from his inexperience and from a high turnover in the nonlawyer staff to which he delegated duties such as recording documents and preparing title policies when he practiced at the Dallis Law Firm. He stated he was not informed by his staff that Client A had attempted to contact him about her concerns.

Respondent attributed his failure to comply with the Deferred Discipline Agreement to scheduling conflicts with his

Law Office Management Advisor. He admitted he did not notify ODC that he was having difficulty scheduling a meeting with his advisor and he did not seek out a substitute advisor. There is no excuse for Respondent's failure to take the minimal steps to meet the assigned advisor. Respondent asserted that, despite his failure to meet with an advisor, he had implemented improvements to the management of his solo practice. In addition, Respondent stated he had participated in the Legal Ethics and Practice Program (LEAPP) administered by ODC.

The Panel found Respondent committed misconduct in these three matters, and in light of the failed Deferred Discipline Agreement, it recommended a definite suspension of ninety days. The Panel found "Respondent simply disregarded his obligations pursuant to the [Deferred Discipline] Agreement and gave no plausible justification for doing so." However, the Panel expressed concern that Respondent might suffer from an undiagnosed mental health problem. Accordingly, the Panel recommended Respondent be required to undergo a mental health evaluation and, if treatment was recommended, submit quarterly reports from his treating physician. Moreover, the Panel recommended Respondent be required to obtain and meet with a Law Office Management Advisor according to the terms set forth in the Deferred Discipline Agreement. Finally, the Panel recommended Respondent be required to pay the costs of the proceedings.

### III.

"This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record." *In re Thompson*, 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). We "may accept, reject, or modify in whole or in part the findings, conclusions and recommendations of the [Panel]." Rule 27(e)(2), RLDE, Rule 413, SCACR.

### IV.

We find that, in 2003 and 2004, Respondent conducted a series of real estate transactions without following proper procedures. He prepared an inaccurate HUD statement,

disbursed funds prematurely, and unreasonably delayed in filing deeds. In addition, he failed to respond to clients' requests for information. Most troublesome is Matter III, in which Respondent moved forward with a real estate refinance in the absence of his client's wife even though he was aware the property was titled jointly in the name of both spouses.

Our sanctions for attorneys who exhibit a lack of diligence in legal matters have varied according to the egregiousness of the conduct. *Compare In re Day*, 352 S.C. 41, 572 S.E.2d 291 (2002) (issuing a public reprimand to an attorney who exhibited a pattern of failing to promptly handle client matters and failing to adequately communicate with clients), *and In re Bruner*, 321 S.C. 465, 469 S.E.2d 55 (1996) (issuing a public reprimand to an attorney who failed to forward closing documents to the appropriate parties, resulting in a misrepresentation to a title insurer about the status of a lien), *with In re Sims*, 380 S.C. 61, 668 S.E.2d 408 (2008) (imposing a ninety day suspension where an attorney failed to timely act on his clients' behalf, failed to promptly remit unearned fees, and failed to respond to ODC's investigation), *and In re Tootle*, 319 S.C. 392, 461 S.E.2d 824 (1995) (imposing a four month suspension where an attorney failed to diligently pursue client matters and unreasonably delayed in remitting unearned fees and other client funds). We have recognized that improper procedures in real estate transactions merit severe sanctions. *In re Johnson*, 386 S.C. 550, 560, 689 S.E.2d 623, 628 (2010).

## V.

■ We conclude Respondent violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (competence); Rule 1.3 (diligence); Rule 1.4 (communication with clients); Rule 1.15 (safekeeping property); Rule 4.1 (truthfulness in statements to others); Rule 5.3 (responsibilities regarding nonlawyer assistants); Rule 8.4(a) (violating the Rules of Professional Conduct); and Rule 8.4(e) (conduct prejudicial to the administration of justice).

■ We note that Respondent's conduct results not from fraud or deceit, but from carelessness and inattention to the precise requirements associated with real estate transactions and closings. We have further considered Respondent's coop-

eration and candor with ODC. We hold that a public reprimand is the appropriate sanction under the circumstances of this case.

Respondent shall pay costs in the amount of $671.43. *See* Rule 27(e)(3), RLDE, Rule 413, SCACR. Respondent shall submit to a mental health evaluation, follow the treatment recommendations of his mental health professional, and submit quarterly updates to the Office of Commission Counsel regarding his mental health status for a period of two years. At oral argument, Respondent asserted he was in the process of closing his law office and withdrawing from the practice of law. In the event Respondent continues or resumes the practice of law, he shall obtain and meet with a Law Office Management Advisor according to the terms set forth in his Deferred Discipline Agreement, with responsibility for monitoring compliance to be determined by the Office of Commission Counsel.

**PUBLIC REPRIMAND.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.